# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER JOHN PIA**, | ) |
| Plaintiff, | ) |
| | ) 2:10cv1320 |
| v. | ) **Electronic Filing** |
| | ) |
| **COMMISSIONER OF SOCIAL SECURITY**, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Christopher John Pia ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act"). This matter comes before the court on cross motions for summary judgment. (ECF Nos. 9, 11). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be granted in part, Defendant's Motion for Summary Judgment will be denied, and the matter will be remanded with direction to grant benefits consistent with an onset date of December 8, 2007.

### II. PROCEDURAL HISTORY

Plaintiff applied for SSI on April 3, 2007, claiming that he was disabled from all work as of February 1, 2005 due to functional limitations stemming from mental impairments. (R. at 89

– 95).[1] Plaintiff was initially denied benefits on January 20, 2007. (R. at 70 – 74). A hearing was scheduled for November 5, 2008, and Plaintiff appeared to testify represented by counsel. (R. at 23 – 38). A vocational expert also testified. (R. at 23 – 38). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on November 14, 2008. (R. at 9 – 22). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on July 6, 2010, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 3 – 5).

Plaintiff filed his Complaint in this court on October 12, 2010. (ECF No. 3). Defendant filed his Answer on February 22, 2011. (ECF No. 5). Cross motions for summary judgment followed. (ECF Nos. 9, 11).

### III. STATEMENT OF THE CASE

#### A. General Background

Plaintiff claimed he was disabled due to depression and bipolar disorder. (R. at 113). He stated that panic attacks and alternating manic and depressive episodes precluded him from maintaining full-time work. (R. at 113). Plaintiff was born on June 22, 1964. (R. at 109). At the time of his administrative hearing, Plaintiff was forty four years of age. Plaintiff did not complete high school, but did earn a GED. (R. at 26). He had received no post-secondary education or vocational training. (R. at 26). Plaintiff worked for a year installing drywall for a construction company, but was thereafter self-employed as a mechanic. (R. at 114, 213). He had not worked since 2005. (R. at 213). He subsisted on cash assistance and food stamps, and lived alone in an apartment, with assistance from his stepfather. (R. at 26, 213).

---

[1] Citations to ECF Nos. 6 – 6-7, the Record, *hereinafter*, "R. at __."

In his own functional report of day-to-day activity, Plaintiff explained that he was capable of independent care, and was able to maintain his own residence. (R. at 120 – 27, 140 – 47). Plaintiff could drive a car, and was capable of shopping on his own. (R. at 120 – 27, 140 – 47). Plaintiff could pay his bills, count change, and manage a savings account. (R. at 120 – 27, 140 – 47). However, Plaintiff had difficulty with concentration and sustained effort. (R. at 120 – 27, 140 – 47). He was in need of reminders to complete tasks and take his medications. (R. at 120 – 27, 140 – 47). Plaintiff also indicated that he struggled with mood swings and depression. (R. at 120 – 27, 140 – 47).

Plaintiff's hobbies included regularly working out and watching television. (R. at 120 – 27, 140 – 47). Plaintiff occasionally socialized with friends and attended church. (R. at 120 – 27, 140 – 47). He described himself as increasingly withdrawn, however. (R. at 120 – 27, 140 – 47). Plaintiff did not have difficulty getting along with others. (R. at 120 – 27, 140 – 47).

**B. Medical History**

Plaintiff had an established history of drug and alcohol abuse ("DAA"), and began therapy for his substance abuse in November 2005. (R. at 150 – 51). Plaintiff was found to be in need of abstinence maintenance, addiction recovery education, sobriety skills, and a support system. (R. at 150 – 51). His prognosis at that time was considered to be guarded. (R. at 150 – 51). Plaintiff received DAA-specific treatment at Gateway Rehabilitation Center in January and February of 2006. (R. at 152).

Plaintiff was examined twice by psychologist R.T. Marion, Ph.D. in April and May of 2007. (R. at 163 – 68). Following his first session with Dr. Marion, Plaintiff was found to be moderately limited in all areas of functioning. (R. at 163 – 68). He was noted to be in early

3

recovery for DAA, and was noted to have poor attention and concentration. (R. at 163 – 68). Plaintiff was receiving regular treatment for his DAA and psychiatric issues. (R. at 163 – 68). Plaintiff was diagnosed with alcohol dependence and cocaine abuse, depression, and anxiety disorder. His global assessment of functioning[2] ("GAF") score was 40. (R. at 163 – 68).

Following his second session with Dr. Marion, Plaintiff was determined to have no limitation in his ability to interact with others, and only slight to moderate limitation in all other areas of functioning. (R. at 163 – 68). Plaintiff was noted to be actively involved in treatment for DAA and his psychological issues. (R. at 163 – 68). His attention and concentration were

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 91 – 100 exhibits "[s]uperior functioning in a wide range of activities" and "no symptoms;" of 81 – 90 exhibits few, if any, symptoms and "good functioning in all areas," is "interested and involved in a wide range of activities," is "socially effective," is "generally satisfied with life," and experiences no more than "everyday problems or concerns;" of 71 – 80, may exhibit "transient and expectable reactions to psychosocial stressors" and "no more than slight impairment in social, occupational, or school functioning;" of 61 – 70 may have "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning, but generally functioning pretty well" and "has some meaningful interpersonal relationships;" of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 41 – 50 may have "[s]erious symptoms (e.g., suicidal ideation …)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 31 – 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood;" of 21 – 30 may be "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., … suicidal preoccupation)" or "inability to function in almost all areas;" of 11 – 20 may have "[s]ome danger of hurting self or others" or "occasionally fails to maintain minimal personal hygiene" or "gross impairment in communication;" of 1 – 10 may have "[p]ersistent danger of severely hurting self or others" or "persistent inability to maintain minimal personal hygiene" or "serious suicidal act with clear expectation of death." *Id.*

still notable issues, but Dr. Marion felt that this would improve with continued abstinence. (R. at 163 – 68). At the time, Plaintiff had only been sober for approximately two months. (R. at 163 – 68). Plaintiff characterized himself as "stupid," and claimed to suffer from anxiety, racing thoughts, distractibility, and disorganized thinking. (R. at 163 – 68). Plaintiff was impulsive. (R. at 163 – 68). Dr. Marion diagnosed alcohol and cocaine dependence in early remission, and attention deficit disorder ("ADD"). (R. at 163 – 68). Plaintiff's GAF score was 45. (R. at 163 – 68).

Plaintiff received treatment through Beaver Valley Mental Health Services (later referred to as "Staunton Clinic") beginning in January 2003 and ending in July 2008. (R. at 170 – 83, 221 – 27). During that time, Plaintiff's diagnoses and alleged symptoms included bipolar disorder, anxiety, panic attacks, depressed mood, irritability, disturbed sleep, avoidance behaviors, and DAA. (R. at 170 – 83, 221 – 27). At a therapeutic session in October 2005, following his alleged disability onset, Plaintiff was noted to suffer from depressive disorder and DAA. (R. at 170 – 83, 221 – 27). Plaintiff had been sober for five days prior to the session. (R. at 170 – 83, 221 – 27). His mood was low, his concentration was poor, he had racing thoughts, and he was restless. (R. at 170 – 83, 221 – 27). Plaintiff had labile affect, loud pressured speech, was anxious and dysphoric, had poor insight, and was disheveled. (R. at 170 – 83, 221 – 27).

By March 2006, Plaintiff was still suffering from anxiety, but his DAA was considered to be in early remission. (R. at 170 – 83, 221 – 27). Plaintiff was depressed, lacked motivation, and had poor impulse control. (R. at 170 – 83, 221 – 27). He was disheveled and had poor insight, but had normal speech, and normal psychomotor activity. (R. at 170 – 83, 221 – 27). He was advised to continue sobriety and to attend abstinence programs. (R. at 170 – 83, 221 – 27).

5

In August 2006, Plaintiff was still sober, but his anxiety had increased. (R. at 170 – 83, 221 – 27). He was attending alcoholics anonymous ("AA"). (R. at 170 – 83, 221 – 27). Plaintiff's impulse control and insight were improving. (R. at 170 – 83, 221 – 27). He was disheveled, but his speech and psychomotor activity were normal. (R. at 170 – 83, 221 – 27).

By January 2007, Plaintiff was considered to be sober for one full year. (R. at 170 – 83, 221 – 27). His appearance, motor activity, speech, sensorium, and thought content were normal. (R. at 170 – 83, 221 – 27). However, he was irritable and anxious, he experienced mood swings, and his insight and judgment were lacking/impaired. (R. at 170 – 83, 221 – 27).

Treatment notes in March 2007 indicated that Plaintiff had normal appearance, motor activity, speech, sensorium, behavior, affect, judgment, sleep, and appetite. (R. at 170 – 83, 221 – 27). His claims of continued sobriety were questioned, however, and there was some suspicion of malingering. (R. at 170 – 83, 221 – 27). The following month, Plaintiff was seen again after an arrest for harassing a former girlfriend. (R. at 170 – 83, 221 – 27). Plaintiff had stopped taking his medications, but denied DAA. (R. at 170 – 83, 221 – 27). Plaintiff was noted to be anxious and argumentative, his impulse control was questionable, his insight was poor, and he was disheveled. (R. at 170 – 83, 221 – 27).

As of June 2007, Plaintiff's appearance, motor activity, sensorium, thought, affect, and appetite were normal. (R. at 170 – 83, 221 – 27). However, he was hyperloquacious, depressed and anxious, and lacking insight. (R. at 170 – 83). Plaintiff was still considered to be sober, but he admitted that his use of medication was not always consistent. (R. at 170 – 83, 221 – 27). He was noted to have made poor progress in terms of his treatment goals. (R. at 170 – 83, 221 – 27).

A mental residual functional capacity ("RFC") assessment was completed by state agency evaluator Douglas Schiller, Ph.D. on June 18, 2007. (R. at 185 – 88). Plaintiff was considered by Dr. Schiller to be suffering from organic mental disorders, anxiety-related disorders, and substance addiction disorders. (R. at 185 – 88). However, Plaintiff was only moderately to not significantly limited in all areas of functioning. (R. at 185 – 88). Dr. Schiller stated that while the medical record indicated that Plaintiff struggled with anxiety disorder, ADD, panic disorder with agoraphobia, and polysubstance abuse and dependence, Plaintiff's basic memory processes were intact, he could make simple decisions, he could carry out short, simple instructions, and he could perform jobs not involving complex tasks. (R. at 185 – 88). While Plaintiff's social functioning was impaired by his emotional lability, Dr. Schiller felt that the opinions of Dr. Marion showed that Plaintiff was not so impaired as to be precluded from full-time work. (R. at 185 – 88).

Plaintiff returned to Beaver Valley Mental Health Services in November 2007. (R. at 170 – 83, 221 – 27). Plaintiff was diagnosed with anxiety disorder and bipolar disorder. (R. at 170 – 83, 221 – 27). Plaintiff complained of mood swings and irritability. (R. at 170 – 83, 221 – 27). Plaintiff had been compliant with medications, and had normal appearance, psychomotor activity, speech, impulse control, behavior, and orientation. (R. at 170 – 83, 221 – 27). Plaintiff's insight was good, but his affect was dysthymic and labile. (R. at 170 – 83, 221 – 27).

On December 8, 2007, Plaintiff was evaluated by psychologists Martin Meyer, Ph.D. and Julie Uran, Ph.D. (R. at 212 – 18). Plaintiff's long history of DAA was noted. (R. at 212 – 18). Also noted, were complaints of mood swings, anxiety, agoraphobia, anhedonia, fatigue, difficulty concentrating, racing thoughts, and impulsivity. (R. at 212 – 18). Plaintiff claimed both mental and physical abuse at the hands of his parents and step-parents. (R. at 212 – 18).

Drs. Meyer and Uran noted that Plaintiff had engaged in therapy for his issues in the past, but that he failed to consistently attend appointments. (R. at 212 – 18). Plaintiff was observed to be irritable during the early stages of his evaluation. (R. at 212 – 18).

Drs. Meyer and Uran conducted a number of tests of intelligence, personality, and academic achievement. (R. at 212 – 18). Based upon the results, Plaintiff was believed to suffer from severe anxiety and depression. (R. at 212 – 18). Plaintiff also displayed symptoms of attention deficit hyperactivity disorder ("ADHD"). (R. at 212 – 18). Impulsivity and difficulty maintaining attention were both observed. (R. at 212 – 18). Testing also corroborated Plaintiff's complaints of loss of pleasure and interest in activities, fatigue, and anxiety. (R. at 212 – 18). Plaintiff exhibited poor coping skills, and his overall personality adjustment was found to be poor. (R. at 212 – 18).

Drs. Meyer and Uran concluded their evaluation by opining that Plaintiff was of low average intelligence, yet possessed vocational potential at skilled levels. (R. at 212 – 18). However, due to his difficulties with attention, concentration, and interacting with others, Plaintiff was believed to be incapable of maintaining employment. (R. at 212 – 18). Specifically, Plaintiff's functional limitations included physical mobility, coping skills, frequent absence from work secondary to agoraphobia, attentional problems, lability in mood, calculation abilities, perceptual organization abilities, mechanical aptitudes, and higher level reasoning. (R. at 212 – 18). Plaintiff was diagnosed with bipolar disorder, panic disorder with agoraphobia, ADHD, mathematics disorder, and polysubstance dependence in remission. (R. at 212 – 18). Plaintiff received a GAF score of 50. (R. at 212 – 18).

Plaintiff was seen at the Staunton Clinic in January 2008, at which time he was diagnosed with bipolar disorder and anxiety. (R. at 170 – 83, 221 – 27). Plaintiff was compliant with his

medications, but still complained of mood swings. (R. at 170 – 83, 221 – 27). While Plaintiff's affect was dysthymic, he was otherwise indicated to be normal. (R. at 170 – 83, 221 – 27). Staunton Clinic notes through July 2008 remained largely the same. Plaintiff continued to complain of mood swings, and his affect was dysthymic and labile. (R. at 170 – 83, 221 – 27). However, he was otherwise indicated to be normal. (R. at 170 – 83, 221 – 27).

On July 28, 2008, Plaintiff's treating psychiatrist at Beaver Valley Mental Health Services and the Staunton Clinic, Mikhail Vassilenko, M.D., indicated that Plaintiff was seriously limited in his ability to:

> Sustain an ordinary routine without special supervision;
> Accept instructions and respond appropriately to criticism from supervisors;
> Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;
> Respond appropriately to changes in a routine work setting;
> Understand and remember detailed instructions;
> Set realistic goals or make plans independently of others;
> Interact appropriately with the general public; and,
> Travel in an unfamiliar place.

(R. at 208 – 11). Further, Plaintiff was considered to be completely unable to:

> Remember work-like procedures;
> Carry out very short, simple instructions;
> Maintain attention for two hours;
> Maintain regular attendance and be punctual within customary, usually strict tolerances;
> Work in coordination with or proximity to others without being unduly distracted;
> Complete a normal work day and work week without interruptions from psychologically based symptoms;
> Perform at a consistent pace without an unreasonable number and length of rest periods;
> Deal with normal work stress;
> Carry out detailed instructions; and,
> Deal with stress of semiskilled and skilled work.

(R. at 208 – 11). Plaintiff was thought to be likely to miss more than four days of work per month. (R. at 208 – 11). Plaintiff was not believed to be a malingerer. (R. at 208 – 11). Plaintiff's DAA was not thought to be a factor contributing to any of Plaintiff's limitations. (R.

9

at 208 – 11). Plaintiff was diagnosed with bipolar disorder. (R. at 208 – 11). His GAF score was 51, although it was indicated that in the prior year, the highest score was 60. (R. at 208 – 11). While Plaintiff was medicated and making improvements, it was felt that his labile affect, depression, restlessness, and poor concentration were his greatest barriers to full-time employment. (R. at 208 – 11).

### C. Administrative Hearing

At his hearing, Plaintiff testified that one of the primary contributors of his psychological limitations was his bipolar disorder. (R. at 31). He stated that he experienced extended periods of depression interspersed with brief periods of intense mania. (R. at 31 – 32). Plaintiff also complained of significant, persistent anxiety. (R. at 32). Plaintiff's anxiety often prevented him from leaving his home due to a fear of social situations. (R. at 33). Plaintiff claimed that his sleep patterns were inconsistent. (R. at 26). He stated that he frequently experienced racing thoughts. (R. at 27).

Plaintiff claimed that he had remained drug and alcohol free for over one year. (R. at 28). Plaintiff occasionally went to AA meetings, and occasionally attended church. (R. at 29). Plaintiff was seeing a psychiatrist, but was not in counseling at the time. (R. at 30). Plaintiff noted that he had experienced some improvement in his mental health following the initiation of medication therapy. (R. at 34). However, Plaintiff complained that his psychiatric medications made him tired. (R. at 30). Plaintiff acknowledged a definite improvement since his cessation of DAA. (R. at 34).

In spite of his limitations, Plaintiff testified that he took care of his apartment, and performed chores independently. (R. at 26). Plaintiff was capable of going for walks around his neighborhood. (R. at 27). He regularly played the piano and read his Bible. (R. at 27). Plaintiff

also read the newspaper and watched television. (R. at 27). Plaintiff had a number of friends with whom he maintained regular contact. (R. at 28). Plaintiff would have visitors, would visit others, could meet others for coffee, and spoke with friends on the telephone. (R. at 28).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational background, and work experience would qualify for a significant number of jobs in existence in the national economy if said person's non-exertional limitations included work involving no more than simple, repetitive tasks, no interaction with the general public, and no close interaction with co-workers. (R. at 36). The vocational expert responded, saying that such a person would be capable of work as a "laundry worker," with 200,000 positions available in the national economy, as a "cleaner," with one million positions available, and as an "addresser," with 200,000 positions available. (R. at 36).

Plaintiff's counsel followed up by first asking what portion of the work day a hypothetical person would be expected to be on-task. (R. at 37). The vocational expert replied that a worker could be off-task no more than fifteen percent of any given work day. (R. at 37). Plaintiff's counsel then asked whether a hypothetical person could hold a job if absent at least four days per month on a continuous basis. (R. at 37). The vocational expert explained that no such person could maintain a full-time job. (R. at 37).

**IV.　STANDARD OF REVIEW**

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When

reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[3], 1383(c)(3)[4]; *Schaudeck v.*

---

[3] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section

12

*Comm'r Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986).

**V.    DISCUSSION**

---

405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

In his decision, the ALJ determined that Plaintiff suffered severe, medically determinable impairments in the way of bipolar disorder and polysubstance abuse in short-term remission. (R. at 14). The ALJ concluded that as a result of said impairments, Plaintiff experienced functional limitations that prevented him from engaging in work involving more than simple, repetitive tasks, significant interaction with the general public or co-workers, rapid production pace, and high levels of stress, and engaging in work which demanded being off-task no more than fifteen percent of any given work day or being absent no more than four times per month. (R. at 17). Based upon the testimony of the vocational expert, the ALJ found that a person so limited would be completely incapable of substantial gainful activity. (R. at 17 – 18). However, the ALJ did not find that Plaintiff qualified for benefits under the Act, because Plaintiff's DAA was considered to be a factor material to a finding of disability. (R. at 18 – 21). Plaintiff objects to the ALJ's decision, arguing that the ALJ erred in failing to properly show that DAA was material. According to Plaintiff, the medical records illustrated a significant period of sobriety during which Plaintiff's mental state did not improve such that he could perform full-time work, and further, that the findings of numerous doctors unequivocally pointed to disability. (ECF No. 10 at 6 – 21).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v.*

14

*Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ did not meet his responsibilities under the law.

With respect to the objective findings of Plaintiff's medical sources, it was the contention of the ALJ that if Plaintiff abstained from DAA his functional limitations would not include the inability to miss fewer than four days of work per month, or the inability to stay on task at least eighty five percent of any given work day. (R. at 18 – 21). As noted by the Plaintiff, however, this assertion was unsupported by substantial evidence. Specifically, the court turns to the findings of one treating psychiatrist, Dr. Vassilenko, and two examining psychologists, Drs. Meyer and Uran.

Dr. Vassilenko's treatment of Plaintiff began at least as early as November 2007. (R. at 221). In his July 2008 assessment of Plaintiff – the latest on record – Dr. Vassilenko made a number of severe limitations findings, the inclusion of which, in any hypothetical, would preclude a claimant from all work. (R. at 208 – 11). While Defendant is correct in pointing out – as the ALJ did – that this 2008 assessment did not include much in the way of narrative support, Plaintiff correctly states that as a treating medical source, his conclusions are nonetheless entitled to serious consideration. As held by the Court of Appeals for the Third Circuit, treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F.2d 1348, 1350 (3d Cir. 1987)). Moreover, the opinions upon which the ALJ relied to refute Dr.

15

Vassilenko's findings – the findings of Drs. Marion and Schiller – provided little better in the way of objective narrative support. (R. at 163 – 68; 185 – 88).

Additionally, the objective findings within Plaintiff's next most recent examination in December 2007 by Drs. Meyer and Uran – supported by data from a number of objective tests, as well as a significant narrative statement – tended to bolster the severe findings of Dr. Vassilenko. (R. at 208 – 18). Of particular import was their finding that Plaintiff would have significant difficulty with attendance – a finding consistent with that of Dr. Vassilenko that Plaintiff would miss four or more days of work per month, regularly. (R. at 208 – 18). Drs. Vassilenko, Meyer, and Uran also found that would have significant difficulty with attention and concentration, interaction with others, and the ability to cope. (R. at 208 – 18).

While the ALJ sought to rely upon relatively mild findings by Dr. Marion, he failed to mention that Dr. Marion gave Plaintiff GAF scores of 40 and 45 – indicating serious, major impairment while Plaintiff was in remission from DAA. (R. at 163 – 68). Also, Dr. Marion's findings appear early in Plaintiff's treatment record, and while he predicted improvement in Plaintiff's overall functioning with sobriety, subsequent medical notes during Plaintiff's established period of abstinence illustrated continued difficulty with mental illness and "poor" progress towards treatment goals. (R. at 170). Based upon this record, the ALJ's decision to disregard the more severe findings of Drs. Vassilenko, Meyer, and Uran was without the support of substantial evidence.

Given the above discussion, it is clear that during an established period of sobriety spanning over a year prior to Plaintiff's administrative hearing, Plaintiff did not experience the sort of improvement which would justify finding his DAA material to his alleged disability. The Act states that "an individual shall not be considered to be disabled . . . if alcoholism or drug

addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 428 (W.D. Pa. 2010) (quoting 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J)). According to 20 C.F.R. §§ 404.1535 and 416.935, the 'key factor' in making the above conclusion is determining whether a claimant would continue to be disabled if he or she ceased to use drugs and/ or alcohol. *See also Nomes v. Astrue*, 155 Soc. Sec. Rep. Serv. 860, 2010 WL 3155507 at * 7 – 8 (W.D. Pa. 2010) (quoting *Warren v. Barnhart*, 2005 WL 1491012 at *10 (E.D. Pa. 2005)). In the present case, on July 28, 2008, Dr. Vassilenko explicitly stated that Plaintiff's DAA was not a factor contributing to Plaintiff's significant limitations. (R. at 208 – 11). The findings of two examining psychologists on December 8, 2007, and one treating psychiatrist on July 28, 2008, pointed plainly to a lack of significant improvement following Plaintiff's sobriety. At that juncture, plaintiff had been sober and drug-free for close to two years. As such, the ALJ's decision that DAA was material was not supported by substantial evidence.

The only remaining issue is whether the case should be remanded to the Commissioner or reversed with a direction to award benefits to Plaintiff. *Morales v. Apfel*, 225 F. 3d 310, 320 (3d Cir. 2000). "[T]he decision to . . . award benefits should be made only when the administrative record has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.* (quoting *Podedworny v. Harris*, 745 F. 2d 210, 222 (3d Cir. 1984)). Here, the record clearly showed that as of December 8, 2007, even absent Plaintiff's DAA, he was not capable of engaging in substantial gainful activity. Remand is, therefore, inappropriate.

**VI.   CONCLUSION**

The Act describes disability as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. The ability to engage in substantial gainful employment means more than the ability to do certain of the physical and mental acts required on the job; the claimant must be able to sustain the physical and mental demands of work-related activities throughout continuous attendance in a regular work week. *Dobrowolsky v. Califano*, 606 F.2d 403, 408 (3d Cir. 1979). The question thus is not whether a claimant can perform activities consistent with substantial gainful activity on any particular day, but whether the claimant has the ability to engage in work activities on a systematic and sustained basis. Plaintiff had the burden of making out a prima facia case that he was disabled within in the meaning of the Act. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); 20 C.F.R. § 404.1512(a). This burden generally is met where the record clearly substantiates a claimant's subjective claim that he or she has an impairment which prevents the claimant from engaging in substantial gainful activity. *Rossi v. Califano*, 602 F.2d 55 (3d Cir. 1979). Here, the substantial evidence of record supports only the conclusion that plaintiff could not engage in such activity at least as of December 8, 2007, when psychologists Meyer and Uran rendered findings indicating that the limitations from Plaintiff's mental impairments prevented him from meeting the demands of substantial gainful activity on a regular and sustained basis. These findings were rendered after Plaintiff had remained drug and alcohol free for close to two years. The record does not contain and the ALJ failed to identify any substantial evidence to illustrate that Plaintiff's DAA was material to his disability on or after that date. Accordingly, to the extent the ALJ's findings and conclusions reflected a determination that Plaintiff was not disabled at or after that point in time they were not supported by substantial evidence.

Based upon the forgoing, the substantial weight of evidence on record demonstrated that Plaintiff was disabled as of December 8, 2007. Accordingly, Plaintiff's Motion for Summary Judgment will be granted in part; Defendant's Motion for Summary Judgment will be denied; and, the decision of the ALJ will be reversed and the matter remanded to the Commissioner with

direction to award benefits to Plaintiff consistent with an onset date of December 8, 2007. An appropriate Order will follow.

Date: March 26, 2012

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Karl E. Osterhout, Esq.
521 Cedar Way, Suite 200
Oakmont, PA 15139
(412) 794-8003

Lindsay Fulton Osterhout, Esq.
521 Cedar Way, Suite 200
Oakmont, PA 15139
(412) 794-8003

Christy Wiegand
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
(412) 644-3500